O'HARE PARNAGIAN LLP
Robert A. O'Hare Jr. (RO 6644)
Andrew C. Levitt (AL 8183)
82 Wall Street, Suite 300
New York, NY  10005
212-425-1401
212-425-1421 (f)

Attorneys for Caprius, Inc. and MCM Environmental Technologies Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
GOLDSTAR MEDICAL CORP.,                :
                                       :
                        Plaintiff,     :
                                       :
        - against -                    :   Case No.: 07 CV 11269 (DC)
                                       :
                                       :
CAPRIUS, INC., and MCM ENVIRONMENTAL   :
TECHNOLOGIES, INC.,                    :
                                       :
                        Defendants.    :
------------------------------------x


**DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. i

STATEMENT OF FACTS .................................................................................................. 1

ARGUMENT ....................................................................................................................... 3

I.   THIS COURT LACKS SUBJECT-MATTER JURISDICTION BECAUSE
     DEFENDANTS CAN PROVE "TO A LEGAL CERTAINTY" THAT GOLDSTAR
     CANNOT SATISFY THE AMOUNT IN CONTROVERSY REQUIREMENT .................... 3

II.  CAPRIUS SHOULD BE DISMISSED AS A DEFENDANT BECAUSE CAPRIUS
     WAS NOT A PARTY TO ANY ALLEGED AGREEMENT BETWEEN MCM AND
     GOLDSTAR ................................................................................................................ 5

CONCLUSION ................................................................................................................... 7

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Aboushanab v. Janay,,*
   No. 06 Civ. 13472 (AKH), 2007 WL 2789511 (S.D.N.Y. 2007) ...... 6

*Burns v. King,*
   160 Fed. Appx. 108 (2d Cir. 2005) ...... 3

*Giovanniello v. New York Law Pub. Co.,*
   No. 07 Civ. 1990 (HB), 2007 WL 2244321 (S.D.N.Y. 2007) ...... 3

*Graubart v. Jazz Images, Inc.,*
   No. 02-CV-4645 (KMK), 2006 WL 1140724 (S.D.N.Y. 2006) ...... 3

*Inter Impex S.A.E. v. Comtrade Corp.,*
   No. 00 Civ. 0133 (GBD), 2004 WL 2793213 (S.D.N.Y. 2004) ...... 5

*Land v. Dollar,*
   330 U.S. 731 (1947) ...... 4

*Randolph Equities, LLC v. Carbon Capital, Inc.,*
   No. Civ. 10889 (PAC), 2007 WL 914234 (S.D.N.Y. 2007) ...... 4

*Thomas v. Dep't of Veterans Affairs,*
   No. 05 Civ. 5348 (LAK) (THK), 2006 WL 1636738 (S.D.N.Y. 2006) ...... 5

*U.S. Bank Nat'l Ass'n v. U.S. Timberlands Klamath Falls, L.L.C.,*
   No. Civ.A. 112-N (SPL), 2005 WL 2093694 (Del. Ch. 2005) ...... 6

*United States v. Funds Held in the Name or for the Benefit of Wetterer,*
   210 F.3d 96 (2d Cir. 2000) ...... 5

*Urena v. Race,*
   No. 05 Civ. 461 (PAC), 2006 WL 1041132 (S.D.N.Y. 2006) ...... 3

*Wallace v. Wood,*
   752 A.2d 1175 (Del. Ch. 1999) ...... 5

Defendants Caprius, Inc. ("Caprius") and MCM Environmental Technologies, Inc. ("MCM"; together, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Complaint, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## STATEMENT OF FACTS[1]

Goldstar holds itself out as a marketing, sales, and consulting firm which claims to have certain contacts in the medical community. (Compl. ¶ 18) Caprius is a Delaware corporation with offices in New Jersey. MCM is a subsidiary of Caprius.[2] (Compl. ¶¶ 14-15) MCM produces medical waste treatment and disposal systems for use in medical facilities, including devices known as the SteriMed System and SteriMed Junior.

On or about November 17, 2003, MCM executed a letter agreement (the "2003 Letter Agreement") whereby MCM agreed to pay a commission to Goldstar for sales of SteriMed systems originated by Goldstar. (Compl. ¶¶ 20-23) As alleged, the maximum commission percentage to be paid to Goldstar was 10%. (Compl. ¶ 26) The 2003 Letter Agreement provided in relevant part:

> In the event that MCM enters into a commercial agreement with any entity that is a direct result of an introduction or sales effort made by Goldstar, provided that it is a party previously approved by MCM and with whom MCM has had no previous contact, MCM agrees to pay Goldstar a sales commission based upon net sales receipts to MCM for units sold or placed on rental . . . .

(Compl. Ex. A)

---

[1] The Statement of Facts is derived from the Complaint which, for purposes of this motion only will be accepted as true. A copy of the Complaint is attached as Exhibit 1 of the transmittal declaration of Robert A. O'Hare Jr. The Complaint will be cited to as "Compl. ¶ __".

[2] In December 2002, Caprius acquired 57% of MCM, which was engaged in the medical waste disposal business through the development and sale of the SteriMed systems. Since the acquisition, all of the medical waste and SteriMed business has continued to be operated through MCM, not through Caprius. (See Declaration of Jonathan Joels at ¶ 3, executed on February 29, 2008)

Thereafter, on or about November 17, 2005, it is alleged that MCM issued Goldstar a second letter (the "2005 Letter") in which it is alleged that MCM "re-affirmed and enhanced" the 2003 Letter Agreement. (Compl. ¶ 4) In the 2005 Letter, MCM purports to agree to pay Goldstar a set 10% commission on all sales made to a company known as DaVita, rather than using the graduated commission schedule set forth in the 2003 Letter Agreement.[3] (Compl. ¶ 33) The 2005 Letter provides in relevant part:

> . . . MCM will pay Goldstar a commission of 10% on all sales made to either DaVita or the old Gambro accounts which are now DaVita clinics.

(Compl. Ex. B)

Although the Complaint alleges no facts that would impose liability against Caprius, the Complaint alleges that <u>both</u> Caprius and MCM breached the 2003 and 2005 letters "by failing to pay commission [sic] on sales and rentals generated by [Goldstar] as promised." (Compl. ¶ 52)

\* \* \*

As set forth in the following pages and the accompanying declarations, the Complaint must be dismissed because this Court lacks subject-matter jurisdiction over the action in that Defendants can prove "to a legal certainty" that Goldstar's claims do not exceed the sum or value of $75,000, i.e., the jurisdictional minimum of this Court. 28 U.S.C. § 1332(a) (2007). In fact, under the most generous view of Goldstar's claims (and giving Goldstar every benefit of the doubt), the amount in controversy is less than $47,500. (<u>See</u> Declaration of Jonathan Joels at ¶¶ 10-13 executed on February 29, 2008 ("Joels Decl."))

---

[3] The 2003 Letter Agreement provides for commissions in the range of 5% to 10% for sales or rentals to any customer that are "direct result of an introduction or sales effort made" by Goldstar. (Compl. Ex. A)

2

Lastly, the claims against Caprius must be dismissed because Caprius was not a party to any agreement alleged in the Complaint, and because Goldstar has alleged no set of facts that could impose liability on Caprius for any obligation of MCM under either the 2003 Letter Agreement or the 2005 Letter.

## ARGUMENT

### I.

### THIS COURT LACKS SUBJECT-MATTER JURISDICTION BECAUSE DEFENDANTS CAN PROVE "TO A LEGAL CERTAINTY" THAT GOLDSTAR CANNOT SATISFY THE AMOUNT IN CONTROVERSY REQUIREMENT

Goldstar cannot establish subject-matter jurisdiction on the basis of diversity because defendants can demonstrate "to a legal certainty" that the amount in controversy is less than $75,000. A party invoking federal diversity jurisdiction must show a reasonable probability that the claim exceeds the statutory jurisdictional amount. Burns v. King, 160 Fed. Appx. 108, 111-12 (2d Cir. 2005). There is "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." Urena v. Race, No. 05 Civ. 461 (PAC), 2006 WL 1041132 at *1 (S.D.N.Y. 2006) (quotation marks omitted). However, at the pleading stage, the party opposing jurisdiction can overcome this presumption by showing "to a legal certainty" that the amount recoverable does not meet the jurisdictional threshold." Id. (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938). If the party asserting a lack of jurisdiction is able to meet this burden, the court must dismiss the claim. See Giovanniello v. New York Law Pub. Co., 07 Civ. 1990 (HB), 2007 WL 2244321 at *4 (S.D.N.Y. 2007) (finding to a legal certainty that jurisdictional amount in controversy had not been met); Graubart v. Jazz Images, Inc., 02-CV-4645 (KMK), 2006 WL 1140724 at *9 (S.D.N.Y. 2006) (same).

3

"In deciding a motion to dismiss under Rule 12(b)(1), a 'court may inquire, by affidavits or otherwise, into the facts as they exist.'" Thomas v. Dep't of Veterans Affairs, No. 05 Civ. 5348 (LAK) (THK), 2006 WL 1636738 at *3 (S.D.N.Y. 2006) (quoting Exchange Nat'l Bank of Chi. v. Touche Ross & Co., 544 F.2d 1126, 1130 (2d Cir. 1976)); accord Land v. Dollar, 330 U.S. 731, 735 n.4 (1947).

Here, defendants, and MCM in particular, can prove to a legal certainty that Goldstar's claims cannot exceed $75,000. Goldstar concedes that the maximum commission to which it is entitled under any scenario is 10%. (Compl. ¶ 33) Therefore, in order to reach the jurisdictional threshold, at least $750,000 in sales covered by the alleged agreements must have occurred. Goldstar bases its claim that it is entitled to commissions on MCM's sales to DaVita. (Compl. ¶¶ 29-37) However, direct gross sales to DaVita by MCM total only $132,669.[4] (See Joels Decl. at ¶ 10) It is believed that DaVita also has pending lease agreements with a third-party purchaser of MCM equipment. The sales to this third-party purchaser total total $342,000. (See Id.) Thus, even if Goldstar could somehow prove that it is entitled to a commission on the total gross sales of $474,669, at a commission rate of 10%, the total amount recoverable would fall well short of the jurisdictional minimum.[5]

Accordingly, the Court does not have subject-matter jurisdiction over Goldstar's claims.

---

[4] Since the 2003 Letter Agreement, DaVita ordered equipment totaling $212,669. (See Joels Declaration, Ex. 3) However, DaVita subsequently cancelled two purchase orders, numbered 1912192 and 1772358, totaling $80,000. Id.

[5] MCM disputes that Goldstar would be entitled to a 10% commission on the $474,669 amount and reserves its rights in this regard.

## II.

## CAPRIUS SHOULD BE DISMISSED AS A DEFENDANT BECAUSE CAPRIUS WAS NOT A PARTY TO ANY ALLEGED AGREEMENT BETWEEN MCM AND GOLDSTAR

Should this Court exercise jurisdiction, Caprius should be dismissed as a defendant because it was not a party to any of the subject agreements between Goldstar and MCM alleged in the Complaint. A claim for breach of contract must be dismissed if the plaintiff asserting the breach fails to allege facts sufficient to show that defendant is a party to the agreement. See Randolph Equities, LLC v. Carbon Capital, Inc., No. Civ. 10889 (PAC), 2007 WL 914234 at *4 (S.D.N.Y. 2007) (dismissing breach of contract claim against defendant who was not a party to the contract); Inter Impex S.A.E. v. Comtrade Corp., No. 00 Civ. 0133 (GBD), 2004 WL 2793213 at *4 (S.D.N.Y. 2004) (same). Here, it is clear that Caprius was neither a party to, nor a signatory of, either of the purported letter agreements. (See Compl. Exs. A, B)

Moreover, Goldstar has alleged no alternative basis for contractual (or any other) liability against Caprius. Goldstar pleads no facts even remotely suggesting that Caprius is the alter ego of MCM, or that piercing the corporate veil would be appropriate. Under New York law, "[q]uestions relating to the internal affairs of corporations . . . are generally decided in accordance with the law of the place of incorporation." United States v. Funds Held in the Name or for the Benefit of Wetterer, 210 F.3d 96, 106 (2d Cir. 2000). Thus, because Caprius is a Delaware corporation, Delaware law concerning corporate veil piercing should be applied.

Under Delaware law, it must be noted that "[p]ersuading a Delaware Court to disregard the corporate entity is a difficult task." Wallace v. Wood, 752 A.2d 1175, 1183

5

(Del. Ch. 1999) (quotation marks omitted). "To sustain an alter-ego theory, the plaintiff must allege facts showing that 'the corporation [is] a sham and exist[s] for no other purpose than as a vehicle for fraud.'" Aboushanab v. Janay, No. 06 Civ. 13472 (AKH), 2007 WL 2789511 at *5 (S.D.N.Y. 2007) (quoting Wallace v. Wood, 752 A.2d 1175, 1184 (Del. Ch. 1999)).

Some factors Delaware Courts take into account when deciding whether to disregard the corporate form include: "(1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a façade for the dominant shareholder." U.S. Bank Nat'l Ass'n v. U.S. Timberlands Klamath Falls, L.L.C., No. Civ.A. 112-N (SPL), 2005 WL 2093694 at *1 (Del. Ch. 2005).

Goldstar did not and cannot plead any facts supporting an alter ego theory that would justify disregarding Caprius' corporate form. For this reason as well, Goldstar's claims against Caprius must be dismissed.[6]

---

[6] New York applies a similar standard for disregarding the corporate form. See Eastern States Elec. Contractors, Inc. v. William M. Crow Constr. Co., 153 A.D.2d 522, 523, 544 N.Y.S.2d 600, 602 (1st Dep't 1989).

6

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint in its entirety with prejudice.

Dated: New York, New York
       February 29, 2008

O'HARE PARNAGIAN LLP

*/s/ Robert A. O'Hare Jr.*
Robert A. O'Hare Jr. (RO 6644)
Andrew C. Levitt (AL 8183)
82 Wall Street, Suite 300
New York, NY 10005-3686
(212) 425-1401

*Attorneys for Defendants
Caprius, Inc. and MCM Environmental
Technologies, Inc.*