O'HARE PARNAGIAN LLP
Robert A. O'Hare Jr. (RO 6644)
Andrew C. Levitt (AL 8183)
82 Wall Street, Suite 300
New York, NY 10005
212-425-1401
212-425-1421 (f)

*Attorneys for Defendants Caprius, Inc. and MCM Environmental Technologies, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GOLDSTAR MEDICAL CORP.,

                              Plaintiff,

              - against -

CAPRIUS, INC. and MCM ENVIRONMENTAL
TECHNOLOGIES, INC.,

                           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Index no. 07 CV 11269

ECF Case

## TRANSMITTAL DECLARATION OF ROBERT A. O'HARE JR.

      I, ROBERT A. O'HARE JR., pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following is true and correct:

      1.     I am a member of the bar of this Court and a member of the firm O'Hare Parnagian LLP, attorneys for the defendants. I submit this transmittal declaration in support of defendants' motion to dismiss.

      2.     Attached hereto as Exhibit 1 is a true and correct copy of the Complaint, dated December 10, 2007, and exhibits thereto.

Executed on February 29, 2008

 

Robert A. O'Hare Jr.

Exhibit 1

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

_____ Southern _____ District of _____ New York _____

Goldstar Medical Corp.

## SUMMONS IN A CIVIL ACTION

V.

Caprius, Inc. and
MCM Environmental Technologies, Inc.

CASE NUMBER:

TO: (Name and address of Defendant)

Caprius, Inc.                          MCM Environmental Technologies, Inc.
One University Plaza, Suite 400        One University Plaza, Suite 400
Hackensack, NJ 07601                   Hackensack, NJ 07601

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Patrick J. Boyd
The Boyd Law Group, PLLC
230 Park Avenue, Suite 1000
New York, NY 10169

an answer to the complaint which is served on you with this summons, within _____ 20 _____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

## J. MICHAEL McMAHON

_____        DEC 1 4 2007
CLERK                                   _____
                                        DATE

(By) DEPUTY CLERK

07 CV 11269

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------    X

GOLDSTAR MEDICAL CORP.,                                          :    **Index No:**
                                                                :
                    Plaintiff,                                  :
                                                                :
                                                                :
         -against-                                              :    COMPLAINT 
                                                                :
CAPRIUS, INC., MCM ENVIRONMENTAL                                :
TECHNOLOGIES, INC.                                              :
                                                                :
                    Defendants.                                 :
------------------------------------------------------------    X

         Plaintiff Goldstar Medical Corporation (hereinafter, "Plaintiff" or "Plaintiff Goldstar"),

by their attorneys, The Boyd Law Group, PLLC, and for their complaint against Defendants

Caprius, Inc., ("Caprius" or "Defendant Caprius") and MCM Environmental Technologies, Inc.

("MCM" or "Defendant MCM") alleges as follows:

### NATURE OF THE CLAIMS

         1.      This is a claim for breach of contract or promissory estoppel brought by Plaintiff

Goldstar against Caprius and MCM.

         2.      On or about November 17, 2003 the CEO of MCM, Mr. George Aaron, (hereinafter

"George Aaron" or "Aaron") tendered to Plaintiff Goldstar a written document memorializing a

contractual agreement between the parties.

         3.      The contract in question provided for a particular commission arrangement with

Goldstar relating to Goldstar's sale of medical supplies.

         4.      This contract was re-affirmed and enhanced in a letter from MCM Vice-President

Elliott Koppel dated November 17, 2005.

         5.      In good faith, acting in reliance on such contract, Plaintiff Goldstar successfully

negotiated the sale of the medical supplies covered under the contract.

AO 440 (Rev. 8/01) Summons in a Civil Action

| RETURN OF SERVICE | | |
|---|---|---|
| Service of the Summons and complaint was made by me[1] | DATE | |
| NAME OF SERVER *(PRINT)* | TITLE | |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant.  Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

    Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL $0.00 |
|---|---|---|

## DECLARATION OF SERVER

    I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____    _____
               Date                *Signature of Server*

                                _____
                                *Address of Server*

---

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

6.    In particular, Plaintiff Goldstar utilized its sophisticated contacts as a marketing consultative sales firm in the medical field to harness and nurture a relationship with DaVita, Inc. (hereinafter "DaVita") and succeeded in facilitating several sales.

7.    The Defendants were paid for the sale of medical units and supplies to DaVita, but refused to compensate Goldstar at all for their work.

8.    Upon information and belief, a large number of sales are being made at this time because of Plaintiff Goldstar's efforts and based upon which Plaintiff Goldstar should be paid.

9.    To date, however, Defendants have failed to compensate Plaintiff in any way for their work and have refused provide them with any accounting of their contractual fee entitlements.

10.    Furthermore, Defendants' conduct and communications regarding the matter indicated that Defendants did not intend to honor the contract with Goldstar at the time of entering into the contract, and did not intend to compensate Goldstar at any point.

11.    Plaintiff, as result, seeks an accounting and all applicable damages

**PARTIES**

12.    Plaintiff is an S corporation duly incorporated under the laws of the State of Delaware in 2000.

13.    Plaintiff's offices are located in New City, New York, and Plaintiff conducts the majority of its busin.    in th State of New York.

14.    Defendant Caprius, Inc. is a corporation with headquarters in Hackensack, New Jersey.

15.    Defendant MCM is a subsidiary of Caprius, Inc. with headquarters in Hackensack, New Jersey.

**JURISDICTION**

16.    Jurisdiction for this action is pursuant to 28 U.S.C. 1332 because the Plaintiff is located in New York and all of the Defendants are located in New Jersey

17.    The amount in controversy, moreover, exceeds $75,000.

2

## STATEMENT OF FACTS

18.    Plaintiff Goldstar is a marketing, sales and consulting firm with particular ties of significance to the medical community.

19.    In 2003, Plaintiff Goldstar commenced negotiations with Defendants MCM and Caprius relating to the sales of certain SteriMed systems that shred and disinfect certain regulated medical waste.

20.    In light of Plaintiff Goldstar's impressive connections, MCM CEO George Aaron negotiated and then executed a contract with Goldstar.

21.    Pursuant to the contract, Goldstar was to use its expertise and connections to facilitate the sale of SteriMed systems.

22.    When sales were consummated, Goldstar was to be paid commission on the sales.

23.    This contract was tendered to Goldstar on or about November 17, 2003.

24.    The contract specifically provided, *inter alia*, that if "MCM enters into a commercial agreement with any entity that is a direct result of an introduction or sales effort made by Goldstar...MCM agrees to pay Goldstar a sales commission, based upon net sales receipts to MCM for units sold' subject to a particular schedule."

25.    The contract also contained a basic schedule for commissions on sales and rentals.

26.    The maximum commission percentage to be paid to Goldstar for sales was 10%.

27.    A full and fair copy of the aforementioned contract is annexed hereto as Exhibit A.

28.    In reliance on this contract, Plaintiff Goldstar dedicated significant time, effort and expense in establishing meaningful contacts to facilitate the sale and/or rental of units.

29.    Most importantly, Plaintiff Goldstar was able to establish a meaningful relationship with DaVita.

30.    DaVita is a company that provides dialysis services to 1,300 outpatient dialysis facilities and acute units in over 800 hospitals.

31.    As a result, this introduction was invaluable to Defendant MCM and Caprius.

3

32.     In light of the promising communication Goldstar was having with DaVita, Goldstar sought specific reassurances with respect to its commissions on sales to DaVita.

33.     In response to the concern, MCM Vice-President Eliot Koppel sent Plaintiff Goldstar a letter specifically providing that "MCM will pay Goldstar a commission of 10% on all sales made to DaVita…"

34.     A true and correct copy of this letter is hereto attached as Exhibit B.

35.     With this additional re-assurance, Goldstar worked hard to nurture a relationship between Goldstar and DaVita.

36.     In light of Goldstar's hard work and dedication, DaVita agreed to purchase a number of SteriMed units in 2007.

37.     The sales were made, and Goldstar invoiced Defendant MCM for commissions on the sales.

38.     At this time, Defendant's manipulations and unfair dealings commenced to manifest in earnest.

39.     First, Defendants suggested that they did not even know that they had entered into a contract with Goldstar.

40.     When Defendant MCM did indeed receive a copy of the contract, MCM President and CEO Dwight Morgan (hereinafter "Morgan") composed a letter to Plaintiff Goldstar on or about April 18, 2007.

41.     In the letter, Morgan attempted to re-negotiate the terms of the earlier contract and to dodge Defendant's obligations based upon the current contract.

42.     A whole host of attempts, on the part of Defendants, to free themselves from their obligations to Goldstar have ensued.

43.     Upon information and belief, Defendants are behaving in this unlawful manner, because DaVita is now a significant purchaser of SteriMed units and Defendants do not want to pay Goldstar on the large volume of sales.

4

44.    It is without question the case that Defendants have not, in any way, paid Plaintiff for any of the commissions earned under the contracts and pursuant to the invoices tendered.

45.    More onerous still, Defendants MCM and Caprius have continued to take advantage of the relationship Plaintiff Goldstar facilitated with DaVita to make additional sales without providing Plaintiff Goldstar with any accounting of these sales for which Plaintiff Goldstar should be entitled commissions.

46.    Plaintiff Goldstar has attempted to negotiate a resolution of this matter without success.

47.    Plaintiff Goldstar has incurred substantial losses as a result of Defendant's unlawful conduct.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

48.    Plaintiff repeats and realleges the above allegations as if fully set forth herein.

49.    The parties entered into a valid written agreement that required Goldstar to generate sales and rentals for Defendants in return for payment of commissions on such sales and rentals.

50.    This agreement was enhanced in a separate letter from Defendant Vice-President Elliott Koppel in November of 2005.

51.    As a result of these agreements, Plaintiff did generate sales and rentals for Defendants through its efforts, most notably generating the DaVita account.

52.    Defendants breached the agreement with Plaintiff by failing to pay commission on sales and rentals generated by Plaintiff as promised.

53.    Defendants continue to be in breach of the contract, as new sales to DaVita are being consummated every month while Plaintiff Goldstar is not being paid commissions for such sales as provided under the contractual arrangement

54.    As a result, Plaintiff is entitled to relief.

5

### SECOND CAUSE OF ACTION

#### (Promissory Estoppel)

55.    Plaintiff repeats and realleges the above allegations as if fully set forth herein.

56.    Defendants made a clear promise to Plaintiff that Plaintiff's services in generating sales and rentals for Defendants would be compensated as per the commission scheme set forth in writing, tendered to Plaintiff around November 17, 2003 and enhanced on November 17, 2005.

57.    Relying on this promise, Plaintiff spent a great amount of time, effort, and money in generating sales and rentals for Defendants.

58.    Defendants were well aware of Plaintiff's reliance, and of all the resources and efforts expended by Plaintiff in generating sales and rentals for Defendants throughout the entire process.

59.    As a result of Plaintiff's efforts, Plaintiff generated sales and rental revenue for Defendants, most notably the DaVita account.

60.    Defendants, however, have not kept their promise and have not paid Plaintiff any commissions on the sales that Plaintiff generated in reliance on Defendant's promise.

61.    As a result, Plaintiff is entitled to relief.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

1)    Award Plaintiff damages in the amount of no less than $ 250,000 representing unpaid commissions and interest;

2)    Order that Defendants provide Plaintiff with an accounting of sales to DaVita;

3)    Award Plaintiff pre-judgment interest;

4)    Award Plaintiff costs and reasonable attorneys' fees;

5)    Award Plaintiff such other and further relief as the Court shall deem just and proper.

6

Dated: December 10, 2007
      New York, New York

THE BOYD LAW GROUP, PLLC

By: _____
    Patrick J. Boyd (PB 0921)
    Attorney for Plaintiff
    230 Park Avenue, Suite 1000
    New York, New York 10169
    Tel: (212) 808-3054

7

# EXHIBIT A



Mr. William Garrett
Goldstar Medical Corp.
56 Pecan Valley Drive
New City, NY 10956

Dear Bill

The following will enumerate the terms of an agreement between MCM Environmental Technologies, Inc ("MCM") and Goldstar Medical Corp (Goldstar). In the event that MCM enters into a commercial agreement with any entity that is a direct result of an introduction or sales effort made by (Goldstar), provided that it is a party previously approved by MCM and with whom MCM has had no previous contact, MCM agrees to pay Goldstar a sales commission, based upon net sales receipts to MCM for units sold or placed on rental according to the final schedule below.

**SALE**

**STERIMED SENIOR**
* Net sales receipts of $85,000 or greater                10%
* Net sales receipts between $75,000 and $84,999          8%
* Net sales receipts between $65,000 and $74,999          7%
* Net sales receipts between $55,000 and $64,999          6%
* Net sales receipts between $50,000 and $54,999          5%

**STERIMED JUNIOR**
* Net sales receipts of $40,000 or greater                10%
* Net sales receipts between $30,000 and $39,999          7%
* Net sales receipts between $25,000 and $29,999          6%
* Net sales receipts between $20,000 and $24,999          5%

**RENTALS**
For units placed on rental or lease, through the introduction by Goldstar MCM will pay a commission of 7.5% on net rental receipts for the period of the rental or lease contract. The terms of the rental or lease contract shall be determined solely by MCM.

Should any adjustments or concessions be needed to secure the business, the parties mutually agree to adjust the commission schedule.

Very truly yours

George Aaron
President and CEO

---

One Parker Plaza, Fort Lee, NJ 07024

Phone (201)-242-1222                                      Fax. (201)-592-0393

# EXHIBIT B



ENVIRONMENTAL TECHNOLOGIES INC.

November 17, 2005

Mr. Joel Shain
Mr. William Garret
Goldstar Medical Corp.
20 Omni Court
New City, NY 10956

Gentlemen:

Thank you for all of your assistance, introductions and behind the scenes work on behalf of MCM and our sales efforts with DaVita. These efforts have been instrumental clearing the way towards our final goal of making DaVita a national account for MCM. To recognize these efforts and to clear up any confusion regarding the commissions due Goldstar for these activities, MCM will pay Goldstar a commission of 10% on all sales made to either DaVita or the old Gambro accounts which are now DaVita clinics.

Once again thank you your assistance and introductions have been of immense help to us.

Very truly yours

*Elliott Koppel*

Elliott Koppel
Vice President Sales and Marketing

Cc: G. Aaron

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

Southern _____ District of _____ New York _____

Goldstar Medical Corp.

## SUMMONS IN A CIVIL ACTION

V.

Caprius, Inc. and
MCM Environmental Technologies, Inc.

CASE NUMBER:

TO: (Name and address of Defendant)

Caprius, Inc.                          MCM Environmental Technologies, Inc.
One University Plaza, Suite 400   One University Plaza, Suite 400
Hackensack, NJ 07601            Hackensack, NJ 07601

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Patrick J. Boyd
The Boyd Law Group, PLLC
230 Park Avenue, Suite 1000
New York, NY 10169

an answer to the complaint which is served on you with this summons, within _____ 20 _____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

## J. MICHAEL McMAHON

CLERK

DEC 1 4 2007

DATE

(By) DEPUTY CLERK

AO 440 (Rev. 8/01) Summons in a Civil Action

| RETURN OF SERVICE | | |
|---|---|---|
| Service of the Summons and complaint was made by me[1] | DATE | |
| NAME OF SERVER *(PRINT)* | TITLE | |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL $0.00 |
|---|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____    _____
                          Date                          *Signature of Server*

                                          _____
                                          *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

07 CV 11269

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X

GOLDSTAR MEDICAL CORP.,                         :    Index No:

                        Plaintiff,              :

                                                :

                                                :

                -against-                       :    COMPLAINT

                                                :

CAPRIUS, INC., MCM ENVIRONMENTAL                :
TECHNOLOGIES, INC.
                                                :

                        Defendants.             :

-------------------------------------------------------------- X

        Plaintiff Goldstar Medical Corporation (hereinafter, "Plaintiff" or "Plaintiff Goldstar"),

by their attorneys, The Boyd Law Group, PLLC, and for their complaint against Defendants

Caprius, Inc., ("Caprius" or "Defendant Caprius") and MCM Environmental Technologies, Inc.

("MCM" or "Defendant MCM") alleges as follows:

### NATURE OF THE CLAIMS

        1.      This is a claim for breach of contract or promissory estoppel brought by Plaintiff

Goldstar against Caprius and MCM.

        2.      On or about November 17, 2003 the CEO of MCM, Mr. George Aaron, (hereinafter

"George Aaron" or "Aaron") tendered to Plaintiff Goldstar a written document memorializing a

contractual agreement between the parties.

        3.      The contract in question provided for a particular commission arrangement with

Goldstar relating to Goldstar's sale of medical supplies.

        4.      This contract was re-affirmed and enhanced in a letter from MCM Vice-President

Elliott Koppel dated November 17, 2005.

        5.      In good faith, acting in reliance on such contract, Plaintiff Goldstar successfully

negotiated the sale of the medical supplies covered under the contract.

6.    In particular, Plaintiff Goldstar utilized its sophisticated contacts as a marketing consultative sales firm in the medical field to harness and nurture a relationship with DaVita, Inc. (hereinafter "DaVita") and succeeded in facilitating several sales.

7.    The Defendants were paid for the sale of medical units and supplies to DaVita, but refused to compensate Goldstar at all for their work.

8.    Upon information and belief, a large number of sales are being made at this time because of Plaintiff Goldstar's efforts and based upon which Plaintiff Goldstar should be paid.

9.    To date, however, Defendants have failed to compensate Plaintiff in any way for their work and have refused provide them with any accounting of their contractual fee entitlements.

10.    Furthermore, Defendants' conduct and communications regarding the matter indicated that Defendants did not intend to honor the contract with Goldstar at the time of entering into the contract, and did not intend to compensate Goldstar at any point.

11.    Plaintiff, as result, seeks an accounting and all applicable damages

### PARTIES

12.    Plaintiff is an S corporation duly incorporated under the laws of the State of Delaware in 2000.

13.    Plaintiff's offices are located in New City, New York, and Plaintiff conducts the majority of its business in the State of New York.

14.    Defendant Caprius, Inc. is a corporation with headquarters in Hackensack, New Jersey.

15.    Defendant MCM is a subsidiary of Caprius, Inc. with headquarters in Hackensack, New Jersey.

### JURISDICTION

16.    Jurisdiction for this action is pursuant to 28 U.S.C. 1332 because the Plaintiff is located in New York and all of the Defendants are located in New Jersey

17.    The amount in controversy, moreover, exceeds $75,000.

2

## STATEMENT OF FACTS

18.    Plaintiff Goldstar is a marketing, sales and consulting firm with particular ties of significance to the medical community.

19.    In 2003, Plaintiff Goldstar commenced negotiations with Defendants MCM and Caprius relating to the sales of certain SteriMed systems that shred and disinfect certain regulated medical waste.

20.    In light of Plaintiff Goldstar's impressive connections, MCM CEO George Aaron negotiated and then executed a contract with Goldstar.

21.    Pursuant to the contract, Goldstar was to use its expertise and connections to facilitate the sale of SteriMed systems.

22.    When sales were consummated, Goldstar was to be paid commission on the sales.

23.    This contract was tendered to Goldstar on or about November 17, 2003.

24.    The contract specifically provided, *inter alia*, that if "MCM enters into a commercial agreement with any entity that is a direct result of an introduction or sales effort made by Goldstar...MCM agrees to pay Goldstar a sales commission, based upon net sales receipts to MCM for units sold' subject to a particular schedule."

25.    The contract also contained a basic schedule for commissions on sales and rentals.

26.    The maximum commission percentage to be paid to Goldstar for sales was 10%.

27.    A full and fair copy of the aforementioned contract is annexed hereto as Exhibit A.

28.    In reliance on this contract, Plaintiff Goldstar dedicated significant time, effort and expense in establishing meaningful contacts to facilitate the sale and/or rental of units.

29.    Most importantly, Plaintiff Goldstar was able to establish a meaningful relationship with DaVita.

30.    DaVita is a company that provides dialysis services to 1,300 outpatient dialysis facilities and acute units in over 800 hospitals.

31.    As a result, this introduction was invaluable to Defendant MCM and Caprius.

3

32.    In light of the promising communication Goldstar was having with DaVita, Goldstar sought specific reassurances with respect to its commissions on sales to DaVita.

33.    In response to the concern, MCM Vice-President Eliot Koppel sent Plaintiff Goldstar a letter specifically providing that "MCM will pay Goldstar a commission of 10% on all sales made to DaVita..."

34.    A true and correct copy of this letter is hereto attached as Exhibit B.

35.    With this additional re-assurance, Goldstar worked hard to nurture a relationship between Goldstar and DaVita.

36.    In light of Goldstar's hard work and dedication, DaVita agreed to purchase a number of SteriMed units in 2007.

37.    The sales were made, and Goldstar invoiced Defendant MCM for commissions on the sales.

38.    At this time, Defendant's manipulations and unfair dealings commenced to manifest in earnest.

39.    First, Defendants suggested that they did not even know that they had entered into a contract with Goldstar.

40.    When Defendant MCM did indeed receive a copy of the contract, MCM President and CEO Dwight Morgan (hereinafter "Morgan") composed a letter to Plaintiff Goldstar on or about April 18, 2007.

41.    In the letter, Morgan attempted to re-negotiate the terms of the earlier contract and to dodge Defendant's obligations based upon the current contract.

42.    A whole host of attempts, on the part of Defendants, to free themselves from their obligations to Goldstar have ensued.

43.    Upon information and belief, Defendants are behaving in this unlawful manner, because DaVita is now a significant purchaser of SteriMed units and Defendants do not want to pay Goldstar on the large volume of sales.

4

44.    It is without question the case that Defendants have not, in any way, paid Plaintiff for any of the commissions earned under the contracts and pursuant to the invoices tendered.

45.    More onerous still, Defendants MCM and Caprius have continued to take advantage of the relationship Plaintiff Goldstar facilitated with DaVita to make additional sales without providing Plaintiff Goldstar with any accounting of these sales for which Plaintiff Goldstar should be entitled commissions.

46.    Plaintiff Goldstar has attempted to negotiate a resolution of this matter without success.

47.    Plaintiff Goldstar has incurred substantial losses as a result of Defendant's unlawful conduct.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

48.    Plaintiff repeats and realleges the above allegations as if fully set forth herein.

49.    The parties entered into a valid written agreement that required Goldstar to generate sales and rentals for Defendants in return for payment of commissions on such sales and rentals.

50.    This agreement was enhanced in a separate letter from Defendant Vice-President Elliott Koppel in November of 2005.

51.    As a result of these agreements, Plaintiff did generate sales and rentals for Defendants through its efforts, most notably generating the DaVita account.

52.    Defendants breached the agreement with Plaintiff by failing to pay commission on sales and rentals generated by Plaintiff as promised.

53.    Defendants continue to be in breach of the contract, as new sales to DaVita are being consummated every month while Plaintiff Goldstar is not being paid commissions for such sales as provided under the contractual arrangement

54.    As a result, Plaintiff is entitled to relief.

5

## SECOND CAUSE OF ACTION

### (Promissory Estoppel)

55.    Plaintiff repeats and realleges the above allegations as if fully set forth herein.

56.    Defendants made a clear promise to Plaintiff that Plaintiff's services in generating sales and rentals for Defendants would be compensated as per the commission scheme set forth in writing, tendered to Plaintiff around November 17, 2003 and enhanced on November 17, 2005.

57.    Relying on this promise, Plaintiff spent a great amount of time, effort, and money in generating sales and rentals for Defendants.

58.    Defendants were well aware of Plaintiff's reliance, and of all the resources and efforts expended by Plaintiff in generating sales and rentals for Defendants throughout the entire process.

59.    As a result of Plaintiff's efforts, Plaintiff generated sales and rental revenue for Defendants, most notably the DaVita account.

60.    Defendants, however, have not kept their promise and have not paid Plaintiff any commissions on the sales that Plaintiff generated in reliance on Defendant's promise.

61.    As a result, Plaintiff is entitled to relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

1)    Award Plaintiff damages in the amount of no less than $ 250,000 representing unpaid commissions and interest;

2)    Order that Defendants provide Plaintiff with an accounting of sales to DaVita;

3)    Award Plaintiff pre-judgment interest;

4)    Award Plaintiff costs and reasonable attorneys' fees;

5)    Award Plaintiff such other and further relief as the Court shall deem just and proper.

6

Dated: December 10, 2007
New York, New York

THE BOYD LAW GROUP, PLLC

By: _____

Patrick J. Boyd (PB 0921)
Attorney for Plaintiff
230 Park Avenue, Suite 1000
New York, New York 10169
Tel: (212) 808-3054

7

# EXHIBIT A



Mr. William Garrett
Goldstar Medical Corp.
56 Pecan Valley Drive
New City, NY 10956

Dear Bill

The following will enumerate the terms of an agreement between MCM Environmental Technologies, Inc ("MCM") and Goldstar Medical Corp (Goldstar). In the event that MCM enters into a commercial agreement with any entity that is a direct result of an introduction or sales effort made by (Goldstar), provided that it is a party previously approved by MCM and with whom MCM has had no previous contact, MCM agrees to pay Goldstar a sales commission, based upon net sales receipts to MCM for units sold or placed on rental according to the final schedule below.

**SALE**
**STERIMED SENIOR**
* Net sales receipts of $85,000 or greater          10%
* Net sales receipts between $75,000 and $84,999     8%
* Net sales receipts between $65,000 and $74,999     7%
* Net sales receipts between $55,000 and $64,999     6%
* Net sales receipts between $50,000 and $54,999     5%
**STERIMED JUNIOR**
* Net sales receipts of $40,000 or greater          10%
* Net sales receipts between $30,000 and $39,999     7%
* Net sales receipts between $25,000 and $29,999     6%
* Net sales receipts between $20,000 and $24,999     5%

**RENTALS**
For units placed on rental or lease, through the introduction by Goldstar MCM will pay a commission of 7.5% on net rental receipts for the period of the rental or lease contract. The terms of the rental or lease contract shall be determined solely by MCM.

Should any adjustments or concessions be needed to secure the business, the parties mutually agree to adjust the commission schedule.

Very truly yours

George Aaron
President and CEO

# EXHIBIT B



ENVIRONMENTAL TECHNOLOGIES INC.

November 17, 2005

Mr. Joel Shain
Mr. William Garret
Goldstar Medical Corp.
20 Omni Court
New City, NY 10956

Gentlemen:

Thank you for all of your assistance, introductions and behind the scenes work on behalf of MCM and our sales efforts with DaVita. These efforts have been instrumental clearing the way towards our final goal of making DaVita a national account for MCM. To recognize these efforts and to clear up any confusion regarding the commissions due Goldstar for these activities, MCM will pay Goldstar a commission of 10% on all sales made to either DaVita or the old Gambro accounts which are now DaVita clinics.

Once again thank you your assistance and introductions have been of immense help to us.

Very truly yours

*Elliott Koppel*

Elliott Koppel
Vice President Sales and Marketing

Cc: G. Aaron